# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| VANESSA RIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17CV2190 RLW |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of

Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI")

under Title XVI of the Act. For the reasons set forth below, the Court affirms the decision of the

Commissioner.

## I. Procedural History

Plaintiff filed applications for DIB and SSI on July 9, 2014. (Tr. 72, 228-35) Plaintiff

alleged disability beginning September 1, 2006[1] due to depression, anxiety, bipolar disorder, and

obesity. (Tr. 167, 228, 230) Plaintiff's claims were denied, and Plaintiff filed a request for a

hearing before an Administrative Law Judge ("ALJ"). (Tr.165-71, 174) On May 17, 2016,

Plaintiff testified at a hearing before the ALJ. (Tr. 123-44) In a decision dated July 12, 2016,

the ALJ determined that Plaintiff had not been under a disability from July 9, 2014 through the

date of the decision. (Tr. 72-83) On July 6, 2017, the Appeals Council denied Plaintiff's request

for review. (Tr. 1-4) Thus, the ALJ's decision stands as the final decision of the Commissioner.

---

[1] Plaintiff later amended her alleged onset date to July 9, 2014. (Tr. 72)

## II. Evidence Before the ALJ

At the May 17, 2016 hearing, Plaintiff appeared with counsel. Plaintiff's attorney provided an opening statement, noting that Plaintiff was 22 years old. She finished the tenth grade but later obtained her GED. She had been treated for a depressive disorder, major depressive disorder, and bipolar disorder. According to her treating physician, Dr. Sudvarg, Plaintiff's restrictions would prevent her from engaging in any work related activity. (Tr. 127)

Upon examination by the ALJ, Plaintiff testified that she lived in a trailer home with some family members. Plaintiff attended an alternative high school for students with certain disorders with about 20 other students. Plaintiff stated she was unable to attend the regular high school because being surrounded by many people was stressful and made her anxious and emotional. Plaintiff dropped out after tenth grade because she no longer qualified for the alternative high school. Plaintiff testified that she previously worked part time for Shop N' Save stores. (Tr. 127-30)

Plaintiff's attorney also questioned the Plaintiff about her impairments. Plaintiff stated that she was unable to work because she had severe depression and severe anxiety, which was classified as bipolar disorder. She testified to experiencing mood swings which made functioning more difficult. Plaintiff became mad easily and would be happy one minute and angry or sad the next. She had crying spells at least once a day that lasted 30 minutes on average. Her anxiety made it hard to concentrate. She experienced anxiety episodes when she was in a car or went somewhere unfamiliar or crowded. She only left her house two or three times a week. Her anxiety had worsened since July of 2014, and she testified that she could only be in a grocery store for 10 minutes before "freaking out." Prior to that time, Plaintiff could do normal grocery shopping for a while and would become more anxious by the time she left.

2

Plaintiff only showered every four to five days because she just didn't care. She wore pajamas most of the time. Plaintiff was unable to drive. (Tr. 130-34)

Plaintiff testified that she was treated by Dr. Sudvarg for roughly ten years. She took medication for her impairments, which currently was not helping her function on a daily basis. Plaintiff took several prescription medications, which list of medications was entered into evidence. Plaintiff stated that she experienced migraines twice a week and headaches every day. Her migraines caused sensitivity to light and sound, and it prevented her from doing anything. She took her medication, put a cool rag on her head, and slept in a dark room to make them go away. The migraine typically went away after five hours of sleep. Plaintiff testified that she had problems sleeping and only slept about six hours a night. She took naps every other day. (Tr. 134-37)

The ALJ asked Plaintiff about noncompliance with taking medication. Plaintiff testified that she had been taking her medication but missed some doses due to memory problems and moving around a lot. She currently was stable and compliant with her medication regimen. Plaintiff further testified that she spent her days lying down and either listening to music or staring at the wall. She did not go out because she had problems getting along with people. Plaintiff had two friends which she talked to online. She visited friends' homes only once in a while. She did not have a driver's license because she was too scared to drive, so she relied on rides from other people. (Tr. 137-41)

A vocational expert ("VE") also testified at the hearing. The ALJ noted that Plaintiff had no past relevant work to consider. The ALJ then asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience with no exertional limitations. The person was limited to simple routine, repetitive tasks and a low stress work environment which

was free of fast-paced production requirements involving only simple work related decisions with few, if any, workplace changes. Further, the individual could have only occasional interaction with supervisors, coworkers, and the public. Given this hypothetical, the VE stated that the person could work as a janitor cleaner, laundry laborer, bench assembler, motel cleaner housekeeper, or injection molding machine tenderer. (Tr. 141-43)

For the second hypothetical, the ALJ changed the first hypothetical to include no interaction with the public and no tandem tasks with respect to interaction with coworkers. The VE testified that the job of injection molding machine tenderer would be eliminated, but the person could work as an inspector and hand packager. The VE further testified that for unskilled jobs, employers would allow less than one unexcused or unscheduled absence per month. Employers also typically permitted a mid-morning break, a coffee break, a lunch break, and a mid-shift break during a workday. The VE stated that exceeding those breaks or absences would eliminate the jobs cited and work in the competitive market. (Tr. 143-44)

In a Function Report – Adult dated July 18, 2014, Plaintiff stated that she was unable to function as a normal member of society due to depression, anxiety, and bipolar disorder. She had difficulty getting out of bed or being around others. She experienced extreme highs and lows. During the day, she slept until she went to work and slept again when she came home from work. She watched TV but mostly slept. Plaintiff had problems sleeping and took medication to help. She needed reminders to take her medication or to wake up for work. She was able to make frozen pizzas and dinners for meals. Plaintiff did laundry but performed no other household chores. She hated being outside and preferred to stay in bed. Plaintiff shopped for food at the grocery store but brought only a small list of needed items. She enjoyed reading, drawing, and music but did not do much of anything due to her illness. She only spoke to her

4

boyfriend and family members that she lived with. Plaintiff went to work, home, and doctors'

offices on a regular basis. She did not get along with people. Plaintiff reported that her illness

affected her ability to talk, remember, complete tasks, concentrate, understand, and get along

with others. Her attention span depended on her mood, and Plaintiff was unable to finish what

she started. She could follow written instructions but not spoken ones. Plaintiff was unable to

handle stress or changes in a routine. (Tr. 279-86)

In a Missouri Supplemental Questionnaire, Plaintiff stated that she worked eight hours a

week. She used a computer for research but only for about 15 minutes at a time. (Tr. 287-89)

### III. Medical Evidence

From January 2013 through October 2013, Plaintiff was treated by Sherifa Iqbal, M.D.

for mood disorder. Plaintiff reported that she had not been taking her medications as prescribed.

Plaintiff reported that she did not like dealing with people and felt stressed and anxious at work.

She was also stressed about her food stamps and appeared irritable and anxious. She did not like

her job at Shop N' Save and was trying to find a new job. Dr. Iqbal diagnosed mood disorder,

NOS (bipolar by history); cannabis dependence in ESR; ETOH dependence in ESR; nicotine

dependence; obesity; headaches; and a GAF of 55. The record shows that Plaintiff also missed

several appointments. (Tr. 351-53, 369-71, 373-80, 391-93, 398, 403-05, 407, 412-13)

Jennifer Gafford, Ph.D., and graduate therapists under her supervision, evaluated Plaintiff

between September and November of 2013 for concerns from Dr. Sudvarg about suicidal

ideation. Plaintiff reported feeling depressed but had no intention to harm herself. She stopped

taking her medications. Treatment providers assessed moderate recurrent major depression and

generalized anxiety disorder with social anxiety features. (Tr. 341-47, 354-57, 359, 367-68)

5

Plaintiff was treated by her primary care physician, Abbe L. Sudvarg, M.D., from January 2013 through November 2016. On January 14, 2013, Plaintiff reported that she wanted to re-start her medications. Dr. Sudvarg diagnosed depression and prescribed Abilify. (Tr. 408-11) On September 26, 2013, Plaintiff reported feeling hopeless nearly every day over the past two weeks. She was off her meds and felt more suicidal and depressed. (Tr. 360-66) On November 18, 2013, Plaintiff was still not taking her medications or oral contraceptives as directed. She was no longer working. She acknowledged that she felt worse emotionally when she did not take her meds. (Tr. 337-40)

Plaintiff followed-up with Dr. Sudvarg on February 19, 2014. She was not taking her medications and wanted restart. (Tr. 331-34) On April 9, 2014, Dr. Sudvarg noted that Plaintiff's psychological symptoms improved with medication but that Plaintiff was inconsistent with her meds. (Tr. 326-29) On June 19, 2014, Plaintiff was again off all of her medications and noted a decline in her mood. Dr. Sudvarg assessed depressive disorder and prescribed Celexa and Wellbutrin. (Tr. 323-25)

In Plaintiff's Disability Determination Explanation dated August 14, 2014, Marsha Toll, Psy.D., found that Plaintiff had affective disorders, anxiety related disorders, and substance addiction disorders based upon review of the record. She was mildly restricted in activities of daily living; had moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Dr. Toll opined that Plaintiff retained the ability to perform simple, repetitive tasks on a sustained basis away from the public. Dr. Toll gave Plaintiff's statements partial credibility because they were not fully supported by the medical evidence. (Tr. 145-54)

Plaintiff saw Dr. Sudvarg on August 20, 2014 to follow-up with medication. Plaintiff reported anxiety and depression but admitted she had not been taking her meds as directed. She continued to be sexually active and refused to use condoms. Dr. Sudvarg prescribed birth control pills and gave Plaintiff Maxalt and Abilify samples. (Tr. 535-38) On September 19, 2014, Plaintiff reported that her meds were generally helpful and requested an increased dose of Abilify. (Tr. 531-34) Plaintiff reported feeling more volatile during a November 24, 2014 visit. She ran out of Abilify. Dr. Sudvarg gave Plaintiff samples of Abilify and condoms. She stressed the importance of taking all meds as directed. (Tr. 528-30)

On January 2, 2015, Plaintiff reported feeling better when taking her meds daily. She was tested for sexually transmitted diseases. Dr. Sudvarg discussed medication compliance, especially with respect to Plaintiff's birth control pills because Dr. Sudvarg did not want Plaintiff to get pregnant on the medications she was taking. (Tr. 519-23) Plaintiff reported feeling more irritable on March 2, 2015. Dr. Sudvarg noted that Plaintiff took her meds "most days." Plaintiff received a refill of Abilify from Behavioral Health, and Dr. Sudvarg emphasized the importance of taking her medications daily. (Tr. 514-16)

Also on March 2, 2015, Plaintiff saw Patrice Louise Pye, Ph.D., for concerns of depression. Dr. Pye assessed chronic major depressive disorder, single episode. Plaintiff reported worrying about her mother in Australia, feeling angry, experiencing crying spells, and hyperventilating. Dr. Pye encouraged Plaintiff to develop a daily routine and begin exercising. (Tr. 517-18) Plaintiff returned to Dr. Pye on May 6, 2015. Plaintiff described her mood as stressed. Plaintiff had suicidal thoughts, especially since she had not been on her meds. She had no intent or plan. (Tr. 511-13)

Plaintiff saw Dr. Sudvarg on May 6, 2015 and reported feeling worse when she is off her meds. She had a new partner and used condoms. She wanted to return to oral contraceptives. Dr. Sudvarg restarted all of Plaintiff's medications, including Abilify and birth control pills. (Tr. 508-10) On July 8, 2015, Dr. Sudvarg again advised Plaintiff to take all of her medications daily. She refused to give Plaintiff Abilify because she was not sure Plaintiff would not get pregnant. Dr. Sudvarg advised that she would prescribe Abilify if Plaintiff was faithful to her birth control pills. (Tr. 498-506)

On October 15, 2015, Dr. Sudvarg restarted Plaintiff's Citalopram and Wellbutrin for Plaintiff's mood problems. She advised Plaintiff to use condoms for all sexual activity. (Tr. 493-96) On October 23, 2015, Dr. Sudvarg refilled Plaintiff's medications. She assessed major depressive disorder, single episode, and major depressive order, recurrent, moderate. (Tr. 490-92)

Plaintiff returned to Dr. Sudvarg on March 4, 2016. Plaintiff reported being out of her meds. She had moved several times and could not find them. She also reported migraines. Dr. Sudvarg emphasized medication compliance and the use of condoms for any sex. Plaintiff's diagnoses included major depressive disorder and morbid obesity due to excess calories. Dr. Sudvarg provided a note for Plaintiff indicating that Plaintiff had mental and physical health issues and was disabled. (Tr. 485-89) On March 18, 2016, Plaintiff reported taking all meds as directed. Dr. Sudvarg placed a Nexplenon implantation for contraception. She also prescribed Topiramate for headaches, as well as Imitrex. (Tr. 481-84)

On March 30, 2016, Dr. Sudvarg completed a Mental Residual Functional Capacity Questionnaire ("MRFC") regarding Plaintiff. Dr. Sudvarg stated that she had treated Plaintiff for 10 years. Diagnoses included major depressive disorder; sleep disorder; obesity; homelessness;

8

a current GAF of 40; and a highest GAF of 50 over the past year. Plaintiff had been treated with medication and counseling with some improvement. Plaintiff had reported spending five hours a day in a recliner. Her prognosis was poor. Dr. Sudvarg listed Plaintiff's symptoms as decreased appetite; thoughts of suicide; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty concentrating; persistent disturbances of mood or affect; apprehensive expectation; perceptional or thinking disturbances; deeply ingrained, maladaptive patterns of behavior; easy distractibility; memory impairment; and sleep disturbance. Dr. Sudvarg opined that Plaintiff could not meet the competitive standards of work due to these impairments. She explained that Plaintiff had a marked ability to concentrate, remember instructions, work independently, and adhere to a schedule. Plaintiff's mental impairments worsened her headache symptoms. Dr. Sudvarg further opined that Plaintiff would be absent from work more than four days per month. Dr. Sudvarg noted that Plaintiff had the motivation to work but was unable to maintain employment. (Tr. 447-50)

Jaron Asher, M.D., evaluated Plaintiff on October 25, 2016. Plaintiff stated that she took a lot of medications, but they did not do much. Dr. Asher assessed depression and noted that he did not think Plaintiff was bipolar. Instead, he believed Plaintiff had mood instability due to developmental blocks, anxiety, and depression. Plaintiff also had anger management issues. He recommended that Plaintiff's physician increase Plaintiff's antidepressant to an effective dose. (Tr. 11-13) On November 4, 2016, Dr. Sudvarg increased Plaintiff's dosage of Abilify, prescribed Albuterol and Baclofen, and advised Plaintiff to quit smoking. (Tr. 14-19)

## IV. The ALJ's Determination

In the decision dated July 12, 2016, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. She had not engaged in

substantial gainful activity since July 9, 2104, the alleged onset date. The ALJ further found that Plaintiff had severe impairments of bipolar disorder, depression, and anxiety disorder. The ALJ considered Plaintiff's obesity non-severe, as the medical records contained no evidence that her weight interfered with functioning. The ALJ also considered Plaintiff's allegations of headaches and noted that nothing in the medical records supported the severity alleged and that Plaintiff's symptoms would likely improve if she was compliant with her prescribed medications. Thus, the ALJ found the headaches to be non-severe. While Plaintiff did have severe impairments, she did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 72-77)

After carefully considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with additional nonexertional limitations. These limitations included work involving simple, routine, repetitive tasks; a low stress work environment defined as being free of fast paced production requirements and involving only simple, work-related decisions with few, if any, work place changes, no interaction with the general public, occasional interaction with co-workers not involving tandem tasks, and occasional interaction with supervisors. In making this finding, the ALJ gave Dr. Sudvarg's assessment little weight because the medical evidence did not support such extreme limitations, and Plaintiff would improve if she took her medication and went back to therapy. The ALJ gave the opinion of consultative examiner, Marsha Toll, Psy.D., great weight because it was fully supported by the medical evidence at the time and consistent with the evidence received since the opinion. The ALJ found that based upon Plaintiff's younger age, high school education, work experience, and RFC, there were jobs existing in significant numbers in the national economy which Plaintiff could perform. These jobs included janitor

cleaner, laundry laborer, bench assembler, and motel cleaner. Therefore, the ALJ concluded that Plaintiff had not been under a disability from July 9, 2014 through the date of the decision and was not disabled. (Tr. 77-83)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that she has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the

11

initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal

quotations omitted). Instead, even if it is possible to draw two different conclusions from the

evidence, the Court must affirm the Commissioner's decision if it is supported by substantial

evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether the Commissioner's final decision is supported by substantial

evidence, the Court must review the administrative record as a whole and consider: (1) the

credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical

evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints

regarding exertional and non-exertional activities and impairments; (5) any corroboration by

third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when

required which is based upon a proper hypothetical question that sets forth the plaintiff's

impairment. *Johnson v. Chater,* 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal

quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the

evidence as a whole, but the law requires the ALJ to make express credibility determinations and

set forth the inconsistencies in the record. *Marciniak v. Shalala,* 49 F.3d 1350, 1354 (8th Cir.

1995). It is not enough that the record contain inconsistencies; the ALJ must specifically

demonstrate that she considered all the evidence. *Id.*

When a plaintiff claims that the ALJ failed to properly consider subjective complaints,

the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to

plaintiff's complaints under the *Polaski*[2] factors and whether the evidence so contradicts

---

2    The Eight Circuit Court of Appeals "has long required an ALJ to consider the following
factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the
duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the

plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

In her brief in support of the Complaint, Plaintiff raises two arguments. First, Plaintiff asserts that substantial evidence does not support the RFC finding. Second, Plaintiff argues that the ALJ's hypothetical question failed to capture the concrete consequences of Plaintiff's impairment such that the VE's response was not supported by substantial evidence. Defendant responds that substantial evidence supports the ALJ's finding that Plaintiff was capable of a reduced range of work despite her impairments. Defendant further contends that the ALJ's hypothetical was proper, and the VE's response constituted substantial evidence that Plaintiff was not under a disability.

## A. Plaintiff's RFC Determination

Plaintiff argues that the ALJ improperly determined Plaintiff's RFC by failing to properly consider Plaintiff's migraine headaches and by relying on the ALJ's own medical opinion and not evidence in the record. RFC is defined as the most that a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of

---

dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Because "'[t]he ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.'" *Martise*, 641 F.3d at 923 (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016; *Martise*, 641 F.3d at 923.

With respect to Plaintiff's migraine headaches, the record shows that Plaintiff did not allege disability due to headaches in her applications. The fact that Plaintiff did not allege headaches/migraines in her disability applications is significant, even if the medical evidence of headaches is later developed. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). The record also shows that the ALJ did consider Plaintiff's testimony regarding headaches at step two and recognized that the medical evidence indicated a history of headaches and migraines. However, the ALJ also noted that Plaintiff had been prescribed medication for these headaches but was not compliant. Indeed, Plaintiff told Dr. Sudvarg that her headaches improved when she took her prescribed medication regularly. (Tr. 326) "[A] claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities." *Daughety v. Berryhill*, No. 4:16-CV-00841-NCC, 2017 WL 4038135, at *3 (E.D. Mo. Sept. 13, 2017). While not an onerous requirement, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Here, Plaintiff points to no evidence to show that her headaches severely limited her ability to

14

work, especially in light of the evidence demonstrating that medication controlled her headache symptoms. Thus, the Court finds that the ALJ did not err in finding Plaintiff's headaches and migraines non-severe. *See Holbert v. Colvin*, No. 2:13-CV-4045-C-DGK, 2014 WL 3729640, at *4 (W.D. Mo. July 28, 2014) (affirming the ALJ's finding that claimant's diabetes was a non-severe impairment where claimant only provided evidence of her diagnosis and prescriptions which controlled her diabetes but no evidence showing that the diabetes imposed any functional limitations).

The record also shows that the ALJ properly considered the medical evidence and based the RFC determination on all of the evidence contained in the record. "'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quoting *Cox v. Astrue*, 495 F.3d 614, 619-20)). The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with additional nonexertional limitations. The ALJ noted that the medical record showed that Plaintiff's mental impairments were managed by medication when Plaintiff took such medication as directed. "'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'" *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

Further, while Plaintiff argues that the ALJ erred in giving great weight to the state agency consultant and little weight to Dr. Sudvarg's assessment, the ALJ properly emphasized Plaintiff's noncompliance with her medication regimen. Indeed, throughout Dr. Sudvarg's treatment records and in her statement, Dr. Sudvarg noted that Plaintiff's symptoms improved when she took her medication. At most visits, Dr. Sudvarg stated that Plaintiff was not taking her medications as directed and that Plaintiff reported improvement when she was compliant.

These records are inconsistent with Dr. Sudvarg's opinion that Plaintiff was severely limited and precluded from work. "'[A] claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight.'" *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (quoting *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir.2008)). The Court finds that due to Plaintiff's noncompliance, the ALJ properly gave Dr. Sudvarg's opinion little weight. *See, e.g., Chaney v. Colvin*, 812 F.3d 672, 679 (8th Cir. 2016) (finding the ALJ was justified in discounting the treating physicians' opinions where claimant failed to comply with taking his prescribed medications); *Bernard v. Colvin*, 774 F.3d 482, 487-88 (8th Cir. 2014) (finding that giving controlling weight to the opinions of plaintiff's treating psychiatrist was unjustified where the doctor did not have the opportunity to assess the plaintiff when he followed the prescribed treatment plan); *Wildman*, 596 F.3d at 964 (finding the ALJ properly discounted the treating physician's opinion because the opinion failed to take claimant's noncompliance into account).

Further, the ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. *Goetz v. Barnhart*, 182 F. App'x 625, 626 (8th Cir. 2006). In addition, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); *see also Wildman*, 596 F.3d at 964 (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration). Here, the ALJ properly found that Dr. Sudvarg's note of March 4, 2016 was merely conclusory, and that her opinion of March 30, 2016 was inconsistent with the treatment notes which did not express any concern that

16

Plaintiff required inpatient or intensive outpatient therapy. "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) (citations omitted); *see also Mitchell v. Colvin*, No. 4:13CV131 CDP, 2014 WL 65386, at \*27 (E.D. Mo. Jan. 8, 2014) (finding the ALJ properly gave the treating physician's opinion less than controlling weight where extreme behavior would have likely resulted in more frequent psychiatric hospitalizations and would not have yielded normal mental status examination results). Based on the inconsistencies in the record between Dr. Sudvarg's opinions and her treatment records and on Plaintiff's noncompliance, the Court finds that the ALJ correctly found that Dr. Sudvarg's assessment of marked limitations was unsupported by the evidence as a whole and properly gave the opinion little weight. *See Perkins v. Astrue*, 648 F.3d 892, 899 (8th Cir. 2011) ("Upon reviewing the entire record, we conclude that there is substantial evidence to support the ALJ's finding that certain opinions in the Medical Source Statement are inconsistent with [the treating physician's] own treatment notes and other relevant evidence.").

With respect to Dr. Toll, "[a]s a general matter, 'the report of a consulting physician . . . does not constitute substantial evidence upon the record as a whole . . . .'" *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (quoting *Lanning v. Heckler*, 777 F.2d 1316, 1318 (8th Cir. 1985) (internal quotation and citation omitted)). However, "the Eight Circuit has recognized that a consulting physician may be accorded greater weight in two circumstances: "(1) where it is supported by better or more thorough medical evidence, or (2) where the treating physician's opinion has been properly discredited." *Durfee v. Colvin*, No. 4:13CV385 CDP, 2014 WL 1057216, at \*8 (E.D. Mo. Mar. 14, 2014) (citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (internal quotations and citations omitted)).

17

As set forth above, the ALJ properly discredited the opinion of Dr. Sudvarg. Further, the ALJ noted that Dr. Toll's opinion that Plaintiff had the ability to perform simple, repetitive tasks on a sustained basis away from the public was supported by the medical evidence in the record. While the ALJ's nonexertional limitations were even more restrictive than those set forth by Dr. Toll, the record shows that the ALJ weighed all the medical evidence in the record to determine Plaintiff's RFC, including those opinions the ALJ found credible from Dr. Toll, Dr. Sudvarg, and the other examining physicians. "The interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Further, the ALJ need not rely entirely on a particular doctor's opinion or choose between opinions. *Martise*, 641 F.3d at 927. Thus, the Court finds that substantial evidence supports the ALJ's RFC determination. *See Perks*, 687 F.3d at 1092 (finding that claimant has burden of establishing RFC; while RFC assessment draws from medical sources for support and must be supported by some medical evidence, it is ultimately administrative determination reserved to Commissioner).

### B. Hypothetical Question to the VE

Next, Plaintiff contends that that the hypothetical question given to the VE failed to capture the concrete consequences of Plaintiff's impairments. "A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). Further, where substantial evidence supports an ALJ's finding that a plaintiff's complaints were not credible, the ALJ may properly exclude those complaints from the hypothetical question. *Id.*

In the instant case, the ALJ included only those impairments and limitations that he found credible. The ALJ asked the VE to assume an individual with the RFC to perform a full range of

work at all exertional levels with additional nonexertional limitations. These limitations are consistent with medical and other evidence in the record and with the ALJ's RFC determination. Therefore, the undersigned finds "[t]he hypothetical was sufficient because it represented a valid assessment of [Plaintiff's] . . . limitations consistent with the evidence in the record." *Davis*, 239 F.3d at 966. Because the hypothetical question properly set forth Plaintiff's limitations, the VE's testimony constituted substantial evidence upon which the ALJ could properly rely in determining that Plaintiff was no longer disabled. *Id.*; *see also Blackburn v. Colvin*, 761 F.3d 853, 861 (8th Cir. 2014) (concluding that the hypothetical was not defective where "the ALJ incorporated all of [Plaintiff's] impairments which he found credible and limited the hypothetical individual to 'brief and superficial interaction with the public and coworkers and only occasional interaction with supervisors'"). Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff was not disabled under the Social Security Act, and the Court affirms the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. An appropriate Judgment shall accompany this Memorandum and Order.

Dated this 20th day of September, 2018.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**